## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 95-CC-00542-SCT

*MISSISSIPPI BOARD OF NURSING*

*v.*

*TERRY LYNN HANSON*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/25/95 |
| TRIAL JUDGE: | HON. JOHN S. GRANT, III |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | ROY A. PERKINS |
| ATTORNEYS FOR APPELLEE: | DENNIS L. HORN |
| | SHIRLEY PAYNE |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES (OTHER THAN WORKERS' COMPENSATION) |
| DISPOSITION: | REVERSED AND RENDERED - 9/18/97 |
| MOTION FOR REHEARING FILED: | 9/30/97 |
| MANDATE ISSUED: | 12/3/97 |

**BEFORE SULLIVAN, P.J., PITTMAN AND BANKS, JJ.**

**PITTMAN, JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

¶1. This appeal comes before the Court from the Chancery Court of Rankin County, Mississippi, which reversed the decision of the Mississippi Board of Nursing to revoke the nursing license of the Appellee, Terry Lynn Hanson.

¶2. The Mississippi Board of Nursing (hereinafter referred to as the "Board") notified Terry Lynn Hanson (hereinafter referred to as "Hanson"), a Registered Nurse, whose license number is R-718246, that charges were being brought against her to seek revocation or suspension of her Registered Nurse License.

¶3. Hanson was summoned to appear before the Board on February 16, 1994, to answer the charges against her as outlined in the Board's Complaint. Such charges pertained to a situation where Hanson allegedly abused a neonatal infant patient at the University of Mississippi Medical Center in Jackson, Mississippi. The charges also involved a series of practices over a period of time that the Board deemed inappropriate. The notice gave the date, time and place of the hearing.

¶4. Specifically, the Board brought charges against Hanson pursuant to § 73-15-29(1)(c) and (e) of the Mississippi Code of 1972, as amended, which states:

> (1) The board shall have power to revoke, suspend or refuse to renew any license issued by the board, or to deny an application for a license, or to fine, place on probation and/or discipline a licensee, in any manner specified in this chapter, upon proof that such person:
>
> . . . .
>
> (c) Has negligently or wilfully acted in a manner inconsistent with the health or safety of the persons under the licensee's care;
>
> (e) Has negligently or wilfully practiced nursing in a manner that fails to meet generally accepted standards of such nursing practice."

The Board outlined four separate charges. First, Hanson was charged with holding a naked baby around its neck with only one hand while on duty in the Neonatal Intensive Care Unit (NICU). The second charge accuses Hanson of carrying babies by holding them under their armpits. The third charge states that Hanson, from the fall of 1992 until December of 1993, endangered patients by carrying them around naked and by washing them in the sinks. The final charge also stems from the period of the fall of 1992 until December of 1993. This charge claims that Hanson endangered the babies by rapidly flipping levers on their incubators in an attempt to stimulate them.

¶5. An administrative hearing was held by the Board on February 16 and 17, 1994. At the hearing, Hanson was present and was represented by Attorney Dennis L. Horn of Jackson, Mississippi. Hanson was informed in the hearing notice that she had the right to appear, either personally or by counsel, or both, to produce witnesses or evidence in her behalf and to have subpoenas issued by the Board. The hearing was both extensive and exhaustive, and Hanson exercised her rights as mentioned above.

¶6. After hearing all the testimony and reviewing the evidence presented at Hanson's hearing, the Board went into a closed session to determine whether or not an executive session should be declared. The Board then went into executive sessions for deliberations and findings concerning Hanson. After coming out of the executive session, the Board announced its decision publicly. The Board found Terry Lynn Hanson guilty on each of the charges outlined in the complaint and imposed the penalty of license revocation for each charge. All charges were considered separate and distinct, and the penalties were to run concurrently. Hanson's hearing concluded with this order. Thereafter, Hanson perfected an appeal to the Chancery Court of Rankin County, Mississippi, pursuant to § 73-15-31(8) of the Mississippi Code of 1972, as amended.

¶7. On April 25, 1995, the Honorable John S. Grant, III, Chancellor of the Rankin County Chancery Court, reversed the decision of the Mississippi Board of Nursing that revoked the nursing license of Terry Lynn Hanson. As a result, the Mississippi Board of Nursing has perfected this appeal to the Supreme Court of Mississippi, requesting the Court to reverse the decision of the Chancery Court of Rankin County, Mississippi.

## STATEMENT OF THE ISSUES

**I. DID THE TRIAL COURT ERR IN REVERSING THE DECISION OF THE MISSISSIPPI BOARD OF NURSING THAT REVOKED THE NURSING LICENSE OF THE APPELLEE, TERRY LYNN HANSON?**

**II. WAS THE MISSISSIPPI BOARD OF NURSING'S DECISION TO REVOKE THE NURSING LICENSE OF TERRY LYNN HANSON SUPPORTED BY SUBSTANTIAL EVIDENCE FOUND TO BE CLEAR AND CONVINCING OR WAS IT ARBITRARY AND CAPRICIOUS?**

**III. DID THE BOARD OF NURSING VIOLATE ANY STATUTORY AND/OR CONSTITUTIONAL RIGHTS OF TERRY LYNN HANSON BY REVOKING HER NURSING LICENSE?**

**IV. WAS THE BOARD OF NURSING WITHIN ITS REALM OF STATUTORY AUTHORITY WHEN IT REVOKED THE NURSING LICENSE OF TERRY LYNN HANSON?**

<u>ANALYSIS</u>

**I. DID THE TRIAL COURT ERR IN REVERSING THE DECISION OF THE MISSISSIPPI BOARD OF NURSING THAT REVOKED THE NURSING LICENSE OF THE APPELLEE, TERRY LYNN HANSON?**

¶8. The scope of review in matters concerning the decisions of administrative agencies is well settled. The Court's consideration is limited to determining whether or not the Board's decision (1) was supported by substantial evidence; (2) was arbitrary or capricious; (3) was beyond the power of the agency to make or (4) violated some statutory or constitutional right of the Appellant. *Mississippi State Tax Comm'n v. Mississippi-Alabama State Fair,* 222 So. 2d 664, 666 (Miss. 1969); *Harris v. Mississippi Real Estate Comm'n,* 500 So. 2d 958, 962 (Miss. 1986); *Eidt v. City of Natchez,* 421 So. 2d 1225, 1231-1232 (Miss. 1982). Our courts are not permitted to make administrative decisions and perform the functions of an administrative agency. *Mississippi State Tax Comm'n v. Mississippi-Alabama State Fair,* 222 So. 2d at 666.

¶9. In *Levi v. Mississippi State Bar,* 436 So. 2d 781, 783 (Miss. 1983), this Court held the accuser to a higher standard of proof in proceedings of a quasi-criminal nature. If the charge was fraud or an "equivalent form of misconduct" the accusing party must prove his case by clear and convincing evidence. *Id.,* at 783. This standard was followed in *Hogan v. Mississippi Board of Nursing,* 457 So. 2d 931, 934 (Miss. 1984), where a nurse's license was revoked when she was accused of misappropriating narcotics. In *Riddle v. Mississippi State Board of Pharmacy,* 592 So. 2d 37, 41 (Miss. 1991), this Court states: "[t]he judicial eye looks to see whether a fair-minded fact finder might have found the evidence clear and convincing that the offense had occurred, and, where that may be said, we will not disturb the Board's judgement." Also in *Riddle,* this Court states that in administrative proceedings against professionals licensed by the state, the disciplinary board is charged to demand clear and convincing evidence of the offense. *Id.,* at 41, *citing Hogan,* 457 So. 2d at 934; *Levi,* 426 So. 2d at 783; *Mississippi Real Estate Comm'n v. White,* 586 So. 2d 805, 808 (Miss. 1991); *State Board of Psychological Examiners v. Hosford,* 508 So. 2d 1049, 1054 (Miss. 1987).

¶10. Therefore, the findings and conclusions of the Board derived from the hearing involving the charges against Hanson should not be disturbed unless they are not supported by substantial evidence, are arbitrary and capricious, violate a statutory or constitutional right of the accused, or are out of the scope of authority for the Board. *Mississippi State Tax Comm'n v. Mississippi-Alabama State Fair,* 222 So. 2d at 666.

¶11. The Board issued the following charges:

**CHARGE #1:** That Terry Hanson violated Section 73-15-29(1)(c) that she has negligently or wilfully acted in a manner inconsistent with the health or safety of the persons under the licensee's care,

AND/OR

That Terry Hanson violated Section 73-15-29(1)(e) that she has negligently or wilfully practiced nursing in a manner that fails to meet generally accepted standards of such nursing practice, to wit:

On or about November 14-15, 1993, with reckless disregard for the health and safety of her patient, she removed an infant from an incubator in Room 407, and holding the baby only by one of her hands around its neck, Hanson carried the baby around the unit making jests while allowing the naked infant's body to dangle unsupported. The baby is believed to be patient #811101.

**CHARGE #2:** That Terry Hanson violated Section 73-15-29(1)(c) that she has negligently or wilfully acted in a manner inconsistent with the health or safety of the persons under the licensee's care,

AND/OR

That Terry Hanson violated Section 73-15-29(1)(e) that she has negligently or wilfully practiced nursing in a manner that fails to meet generally accepted standards of such nursing practice, to wit:

While working as a Registered Nurse at the University of Mississippi Medical Center in NICU, Hanson carried babies by holding them under their armpits.

**CHARGE #3:** That Terry Hanson violated Section 73-15-29(1)(c) that she has negligently or wilfully acted in a manner inconsistent with the health or safety of the persons under the licensee's care,

AND/OR

That Terry Hanson violated Section 73-15-29(1)(e) that she has negligently or wilfully practiced nursing in a manner that fails to meet generally accepted standards of such nursing practice, to wit:

During the period from the fall of 1992 to December of 1993, Hanson endangered the lives of

her NICU patients by removing babies from the incubators and carrying the naked babies to sinks to wash them and to weigh scales located in other rooms of the unit, thus compromising the maintaining of stable body temperatures and unnecessarily exposing the infants to risk of infection.

**CHARGE #4:** That Terry Hanson violated Section 73-15-29(1)(c) that she has negligently or wilfully acted in a manner inconsistent with the health or safety of the persons under the licensee's care,

AND/OR

That Terry Hanson violated Section 73-15-29(1)(e) that she has negligently or wilfully practiced nursing in a manner that fails to meet generally accepted standards of such nursing practice, to wit:

During the period from the fall of 1992 to December of 1993, Hanson stimulated her NICU infant patients' hearts by rapidly flipping the levers on their incubators to jostle the babies as they lay in the incubators, thereby increasing the risk of intra ventricular hemorrhaging (IVH).

As a result of the disciplinary hearing for Hanson, the Board made the following findings:

1. The Board finds that it has jurisdiction over the parties and of the subject matter.

2. The Board finds that there was sufficient corroborating testimony and evidence produced at the hearing indicating that Terry Hanson acted negligently or wilfully in a manner inconsistent with the health and safety of the persons under the licensee's care.

3. The Board finds that there was sufficient corroborating testimony and evidence produced at the hearing indicating that Terry Hanson has negligently or wilfully practiced nursing in a manner that fails to meet generally accepted standards of such nursing practice.

4. The Board finds that there was sufficient corroborating testimony and evidence produced at the hearing indicating that Terry Hanson held a neonatal intensive care patient weighing, more or less, 983 grams on or about November 14 or 15, 1993, in a manner which posed a danger and threat to such baby.

5. The Board further finds that Terry Hanson carried a neonatal intensive care baby weighing, more or less, 983 grams on or about November 14 or 15, 1993, by holding the baby under his armpits.

6. The Board finds that there was sufficient corroborating testimony and evidence produced at the hearing indicating that Terry Hanson stimulated her NICU infant patients by flipping the levers on the incubators in a manner that fails to meet generally accepted standards of nursing practice.

¶12. This Court has given great deference to the decisions of administrative agencies, believing that they know best how to police their own, especially when the board sitting in judgment is comprised of fellow practitioners. *Harris,* 500 So. 2d at 963. Courts are not permitted to substitute their

judgement for that of an administrative agency. ***Barnwell, Inc. v. Sun Oil Company,*** 162 So. 2d 635 (Miss. 1964). That is the case at hand. The Chancery Court judge reweighed the evidence and, while stating the proper standard in his opinion, failed to follow it in the results. Each element of the standard will be discussed in detail in the following pages. Based on the standard as set forth in ***Mississippi State Tax Comm'n v. Mississippi-Alabama State Fair,*** the Chancery Court overstepped its authority by reversing the Nursing Board's decision. Therefore, the decision of the lower court must be reversed on this issue based on the following discussion of facts and law.

### II. WAS THE MISSISSIPPI BOARD OF NURSING'S DECISION TO REVOKE THE NURSING LICENSE OF TERRY LYNN HANSON SUPPORTED BY SUBSTANTIAL EVIDENCE FOUND TO BE CLEAR AND CONVINCING OR WAS IT ARBITRARY AND CAPRICIOUS?

¶**13.** The Board found the evidence to revoke the nursing license of Hanson to be clear and convincing. The Chancery Court found that the Board's decision was not supported by substantial evidence and was arbitrary and capricious.

¶14. In Charge #1 of the Board's complaint, Hanson is accused of violating Mississippi Code Ann. § 73-15-29(1)(c) and (e) by holding a naked infant around its neck with one hand while making jests. An investigation began on December 15, 1993, led by Anita Wren, Head Nurse of the Newborn ICU at University of Mississippi Medical Center. The investigation revealed three nurses who were eyewitnesses to the alleged event: Nurse Dianne Brewer, Nurse Dovina Layton, and Nurse Barbara Gillespie. All three nurses testified that they witnessed Hanson holding a naked baby in an unsafe manner. Although there are variances in the testimony of the three nurses and two of the nurses did not report the incident for at least thirty days, the Board found their testimony to be conclusive proof of Hanson's guilt. In response, the Board found that Hanson held a neonatal intensive care patient in a manner which posed a danger and threat to such baby.

¶15. In contrast, the trial court placed great emphasis on the testimony of Dr. Mitchell Gruich, a medical doctor and second year pediatric resident at University of Mississippi Medical Center. Dr. Gruich testified that a baby held in the manner indicated by the accusing nurses would need emergency treatment almost immediately. The infant did suffer episodes of apnea and bardycardia ("A and B") the following day when Nurse Hanson was not working. Dr. Gruich testified that these episodes of "A and B" could not be attributed to any mishandling of the baby the night before the episodes.

¶16. The trial court found the testimony of Dr. Gruich to be determinative. The court held:

> The discrepancies in Brewer's, Layton's and Gillespie's testimonies, the failure by Brewer and Gillespie to timely report such misconduct when it could have been easily documented with an incident report (forms readily available), and the misidentification of the person in charge, lead the Court to rely heavily on the testimony of Dr. Mitchell Gruich, the aforementioned medical doctor who works in the subject unit. Dr. Gruich accurately described the results and immediate symptomology that would be suffered by an infant held in the manner charged. Since the referenced infant did not suffer such immediate or near immediate symptom ology and no evidence is presented of that infant nor of any other infant who did experience such symptom ology or injury, the testimony of Appellant's accusers must by substantially discounted.

Based on the considerations described above, the trial court found that the evidence against Hanson was not substantial and could not be viewed by a fair-minded fact-finder as clear and convincing. Therefore, the trial court reversed the license revocation as to Charge #1.

¶17. Although there are some discrepancies in the testimony of the nurses, it must be remembered that three people allegedly witnessed the charged conduct. Hanson offered no evidence into the record as to the reason that these nurses would falsely accuse her. The fact that they did not report the incident immediately is of concern to the Court, but acts of this nature are often unreported because of personal feelings, work relations, etc. The confusion over the charge nurse at the time of the incident does make the nurses' testimony appear less credible, but their testimony should not be totally disregarded because of this error. In its own words, the trial court gave great deference to the testimony of Dr. Gruich. Dr. Gruich testified that the baby would need medical treatment almost immediately if held in the manner charged. Since the baby suffered no immediate trauma and needed no immediate treatment, the trial court concluded that the incident did not happen.

¶18. In regard to Charge #1, the Board's holding that Hanson violated Miss. Code Ann. § 73-15-29(1)(c) and (e) is supported by substantial evidence that could be viewed as clear and convincing by a fair-minded fact finder. The Board observed the testimony of the witnesses and weighed the evidence accordingly. The trial court reweighed the evidence placing an emphasis on the testimony of Dr. Gruich. Therefore, as to Charge #1, the decision of the Board should be reinstated.

¶19. Hanson admitted to the practices outlined in Charges #2, #3, and #4. In her written statement, Hanson admitted to carrying babies by the armpits. Hanson also admitted that she carried infants to the scales and to the sink to wash their heads. In her testimony, she admitted to flipping the levers on the isolettes to stimulate the babies but does not admit to doing it rapidly.

¶20. The Board found Hanson's conduct to be inconsistent with the health and safety of the patients under her care and outside of the generally accepted standards of nursing practice. We agree.

¶21. The Board's authority to suspend or revoke nursing licenses arises from the Legislature's desire to protect the public from improper nursing practices. It is the Board's responsibility to oversee the actions of Registered Nurses around the State and to discipline any nurse who endangers the health or safety of the public. The Board found the practices employed by Hanson to be contrary to the best interest of the patients at the University of Mississippi Medical Center and revoked her license to practice nursing in order to protect the public.

¶22. The trial court found the Board's decision to be arbitrary and capricious because many other nurses admitted to using the same improper practices as Hanson. Hanson's wrongdoing should not be justified by the wrongs of others. In the interest of public policy, this Court will give deference to the determination of the Nursing Board and reverse the decision of the trial court as to this issue.

### III. DID THE BOARD OF NURSING VIOLATE ANY STATUTORY AND/OR CONSTITUTIONAL RIGHTS OF TERRY LYNN HANSON BY REVOKING HER NURSING LICENSE?

¶23. This issue was not addressed in the trial court's decision to reverse the findings of the Nursing Board. This issue can be divided into two questions. Did the Board afford Hanson due process? Was

the Board biased? The answer appears clear as to the first issue. Hanson was informed of the time and place of the hearing. She was also informed that she had the right to appear, either personally or by counsel, or both, to produce witnesses or evidence in her behalf, to have subpoenas issued by the Board, and to cross-examine any witnesses introduced by the Board. Hanson took advantage of all the aforementioned rights at the hearing. This Court has held this process to be satisfactory in regard to the due process requirements of both the Mississippi and the United States Constitutions. *Mississippi State Board of Nursing v. Wilson,* 624 So. 2d 485, 494-495 (Miss. 1993).

¶24. Hanson also argues that the Board was biased because she had named each member individually in a federal lawsuit, therefore she could not receive a fair hearing. Hanson claims that the Board conducted the hearing in such a manner as to deprive her of justice. The Board counters Hanson's assertions by quoting the opinion of *United Cement v. Safe Air for the Environment, Inc.,* 558 So. 2d 840, 842-843, which states:

> Administrative hearings of the character involved here are not trials and they are not governed by the same rules which apply in a court of law. *New South Communications v. Answer Iowa, Inc.,* 490 So. 2d 1225, 1227 (Miss. 1986). Further, there is a presumption that the officers conducting the hearing and the members of the Board behave honestly and fairly in the conduct of the hearings and in the decision-making process. *Harrison County School Board v. Morreale,* 538 So. 2d 1196, 1202 (Miss. 1989). Absent some showing of personal or financial interest on the part of the hearing officer or evidence of misconduct on the officer's part, this presumption is not overcome.

Hanson did not meet the standard required by *United Cement* because she showed neither pecuniary interest by the Board in revoking her license, nor prejudgment by the Board. As evidence, Hanson points to the federal lawsuit. In voir dire at the hearing, each member of the Board stated that they had no knowledge of the lawsuit. The lawsuit in question seeks injunctive relief not damages, so there is no pecuniary interest by the Board even if they were aware of the lawsuit.

¶25. Hanson makes repeated objections to the way the hearing was conducted. The Board is correct in citing *New South Communications,* in that the hearing does not have to meet trial standards. Hanson does not meet the standard required by *United Cement,* therefore, this issue should be decided in favor of the Board.

### IV. WAS THE BOARD OF NURSING WITHIN ITS REALM OF STATUTORY AUTHORITY WHEN IT REVOKED THE NURSING LICENSE OF TERRY LYNN HANSON?

¶26. This issue is not challenged by Hanson. It is directly within the power of the Nursing Board as stated in Miss. Code Ann. § 73-15-29(1). Therefore, it has no relevance to the case at hand.

¶27. **REVERSED AND RENDERED.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., BANKS, ROBERTS, SMITH AND MILLS, JJ., CONCUR. McRAE, J., NOT PARTICIPATING.**