# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-SA-00373-COA

**STATE OF MISSISSIPPI BOARD OF NURSING**                    **APPELLANT**

**v.**

**ANN HOBSON**                                                      **APPELLEE**

DATE OF JUDGMENT:              03/12/2018
TRIAL JUDGE:                  HON. MITCHELL M. LUNDY JR.
COURT FROM WHICH APPEALED:    GRENADA COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:       BRETT BAGLEY THOMPSON
ATTORNEY FOR APPELLEE:        J. LAWSON HESTER
NATURE OF THE CASE:           CIVIL - STATE BOARDS AND AGENCIES
DISPOSITION:                  REVERSED AND RENDERED - 09/17/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

## BEFORE J. WILSON, P.J., WESTBROOKS AND LAWRENCE, JJ.

## WESTBROOKS, J., FOR THE COURT:

¶1.     On November 13, 2014, the Mississippi State Board of Nursing (the Board) filed three charges against the Appellee, Ann Hobson, pursuant to Mississippi Code Annotated section 73-15-29 (Rev. 2012). Specifically, the allegations included:

> **Charge I.**    Misappropriation of drugs, supplies or equipment,
>
> **Charge II.**   Addiction or dependency on alcohol or other habit-forming drugs or habitual use of narcotics, barbiturates, amphetamines, hallucinogens, or other drugs having similar effect, or misappropriation of any medication, and
>
> **Charge III.**  Possessing, obtaining, furnishing, or administering drugs to any person, including self, except as legally directed.

¶2.     Hobson was ordered to appear before the Board's Hearing panel (the panel) and

answer for the charges at the Board's Ridgeland, Mississippi office. At the conclusion of the panel hearing, Hobson was found guilty of Charge III and subjected to disciplinary action. Hobson appealed the panel's decision to the full Board; the decision was affirmed. Unsatisfied, Hobson appealed the Board's decision to the Chancery Court of Grenada County. The chancellor reversed the Board's decision, including all coinciding disciplinary measures imposed upon Hobson. Aggrieved, the Board now appeals.

**FACTS AND PROCEDURAL HISTORY**

¶3.    Ann Hobson began her employment as a Certified Registered Nurse Anesthetist (CRNA) at the Indianola, Mississippi, South Sunflower County Hospital (the Hospital) in July 2013. Her chief job duty was administering anesthesia to patients during surgery and other procedures performed in either of the Hospital's two operating rooms. As the CRNA assigned primarily to the Hospital's Operating Room Number 2 (OR 2), Hobson was given keys to the room's lock box. The box contained a number of narcotics used to sedate patients, including Demerol 25 mg. Hobson testified that Bert Romine, the head of the Hospital's Anesthesia Department, instructed her to always keep the keys to the respective lock boxes inside a hidden compartment attached to the fake top of each lock box. Hobson testified that it was her practice to lock the box and return the keys to the designated space after every procedure.

¶4.    On June 10, 2014, Hobson reported to Sunflower Hospital at approximately 7 a.m. to prepare for a surgery scheduled to take place shortly thereafter in the hospital's OR 2. At the

conclusion of the procedure, Hobson claims she administered Demerol to the patient, prepared the anesthesia equipment for the next procedure, and then turned the patient over to Nurse Leslie Moore in the Recovery Room. Moore submitted a signed statement corroborating Hobson's account and indicated she witnessed Hobson sign the narcotic log book to verify that the remaining count of Demerol in the lock box was correct after the surgery ended. After giving a report to Moore, Hobson testified that she left the hospital to return home to Grenada, Mississippi around 8:30 a.m.

¶5. As scrub technicians were preparing the operating rooms for afternoon procedures, they discovered the lock box in OR 2 open with the keys in the door. Supervisors were notified, and a count of the narcotics was conducted. Six vials of Demerol were discovered missing. At approximately 12:30 p.m., CRNA Bert Romine contacted Hobson, informed her of the missing Demerol, and requested that she return to the hospital. Testimony indicates Hobson arrived back on the premises at approximately 1:15 p.m. In a signed statement, LeShonda Townsend, one of the scrub technicians, reported that she witnessed Hobson enter OR 2 with her purse in hand before departing earlier in the day. Hobson was the only member of the group noted to have left the hospital premises.

¶6. The hospital required all persons with direct access to OR 2 to submit to "Reasonable Suspicion/Cause" drug testing for Demerol. The group included both CRNAs, the registered nurses, and the scrub technicians. The samples for the drug testing were collected on-site in one of the hospital's empty patient rooms by lab director and medical technologist Gail Bley.

3

Bley testified that each employee, including Hobson, entered the room alone to provide a sample and remained to watch her seal a tamper-proof bag. Hobson claims she was not present when her sample was labeled or sealed; however, Hobson dated, signed, and initialed a "Chain of Custody" form, acknowledging "that the specimen container(s) was/were sealed with tamper-proof seal(s) in [her] presence; and that the information provided on this form and on the label(s) affixed to the specimen container(s) is correct." Hobson's test came back positive for the drug Meperidine (Demerol).[1] On June 16, 2014, Hobson was called in to discuss the results and then terminated from her position with the hospital. The missing Demerol was never found.

¶7. In November 2014, the Board brought three charges against Hobson based on the test results and missing Demerol. Hobson was compelled to appear before the Mississippi Board of Nursing's Hearing panel to answer the charges in a hearing held on July 23, 2015. At the conclusion of the State's case, the panel dismissed Charges I and II against Hobson. The panel found by clear and convincing evidence that Hobson tested positive for Demerol. Accordingly, Hobson was found guilty of Charge III for "possessing, obtaining, furnishing, or administering drugs to any person, including [her]self, except as legally directed." The Hearing panel suspended Hobson's license for six months, during which time she was ordered to comply with certain stipulations.

_____

[1] Hobson's positive test result was screened by the hospital lab and confirmed by gas chromatography-mass spectrometry testing performed by an outside lab. Demerol is the brand name for the narcotic Meperidine.

4

¶8. Hobson appealed the Hearing panel's decision to the full membership of the Board pursuant to Mississippi Annotated Code section 73-15-31 (Rev. 2012). The full Board affirmed the panel's decision. Hobson then appealed the Board's final decision to the Chancery Court of Grenada County. The chancery court reversed the Board's suspension of Hobson's license and all other forms of discipline imposed. The Board now appeals.

## STANDARD OF REVIEW

¶9. Our judicial review of this administrative appeal is limited. *Miss. State Bd. of Nursing v. Wilson*, 624 So. 2d 485, 489 (Miss. 1993). "The Court's consideration is limited to determining whether or not the Board's decision (1) was supported by substantial evidence; (2) was arbitrary or capricious; (3) was beyond the power of the agency to make[;] or (4) violated some statutory or constitutional right of the Appellant." *Miss. Bd. of Nursing v. Hanson*, 703 So. 2d 239, 242 (¶8) (Miss. 1997) (citing *Miss. State Tax Comm'n v. Mississippi-Alabama State Fair*, 222 So. 2d 664, 666 (Miss. 1969)); *Harris v. Miss. Real Estate Comm'n*, 500 So. 2d 958, 962 (Miss. 1986); *Eidt v. City of Natchez*, 421 So. 2d 1225, 1231-32 (Miss. 1982).

¶10. "Our courts are not permitted to make administrative decisions and perform the functions of an administrative agency." *Id.* "The judicial eye looks to see whether a fair-minded fact[-]finder *might* have found the evidence clear and convincing that the offense had occurred, and, where that may be said, we will not disturb the Board's judgment." *Riddle v. Miss. State Bd. of Pharmacy*, 592 So. 2d 37, 41 (Miss. 1991) (emphasis added).

5

## ANALYSIS AND DISCUSSION

### I. *Should the record include the Board's Final Order?*

¶11. Before reaching the merits of this appeal, we would note that Hobson raises an issue with the record—specifically, the inclusion of the Board's Final Order. Hobson argues that because the Board's Final Order was not entered until August 29, 2017, after the Board filed its certified Administrative Record on Appeal with the chancery court, it was not considered by the chancery court and should not be deemed a part of the record before this Court. Hobson further argues that the chancery court could not have substituted its judgment for the Board's decision without the order's findings having been included as a part of the record.

¶12. But, Hobson received the order by certified mail, and the order was submitted to the chancery court for consideration after its entry. During oral argument, the State represented that on September 5, 2017, Hobson submitted a supplemental appeal to the circuit court, referencing the order she now seeks to exclude. Hobson admittedly had actual knowledge of the order, and it logically follows that she was aware of any perceived procedural defects with regard to the entry of the order into the record on appeal; no objection(s) were raised until now. Therefore, we find this issue was not raised at the chancery-court level and therefore may not be raised for the first time with this Court.

### II. *Was the Board's decision supported by substantial evidence?*

¶13. Turning to the thoroughly briefed arguments before this Court, Hobson relies on *Hogan v. Miss. Bd. of Nursing*, 457 So. 2d 931 (Miss. 1984), reasoning that the Board's

decision was not supported by clear and convincing evidence. As articulated above, the standard of review on appeal differs from that of the original hearing body. While the Board was indeed required to make a finding based on clear and convincing evidence, Hobson is mistaken in transferring that standard to this Court. Like the chancery court, we are tasked with reviewing the record for substantial evidence to support the Board's decision. Substantial evidence has been defined as "such relevant evidence as reasonable minds *might* accept as adequate to support a conclusion"; the evidence must be more than a "mere scintilla or suspicion." *Delta CMI v. Speck*, 586 So. 2d 768, 773 (Miss. 1991); *Miss. Real Estate Comm'n v. Anding*, 732 So. 2d 192, 196 (¶13) (Miss. 1999).

¶14. In *Hogan*, Patricia was also a CRNA charged in a case involving missing Demerol. *Hogan*, 457 So. 2d at 932. The Board found that Patricia was "*unable to reasonably account for missing narcotics*," but unlike Hobson, "there was *absolutely no proof* that she had converted those narcotics to her own use." *Id.* at 935.

¶15. Here, Hobson was not only responsible for the mishandling and misplacement of the Demerol, but she had the missing drug in her system without medical explanation.[2]

¶16. Hobson does not deny that the positive result is substantial evidence, but she contends the damning results were improperly assigned to her. Hobson asserts that Gail Bley failed to correctly follow procedures for specimen collection, which rendered Hobson's test results

---

[2] Hobson did not have a prescription for Demerol and had not been the subject of any recent surgeries at the time the test was administered.

unreliable. Bley admittedly had the employees sign the container labels before placing them on the specimens (despite protocol instructions that the labels be signed after placement on the specimen containers). During the Board hearing, the State's expert, Dr. Barry Lublin, explained that this minor deviation is common and a mere technicality that imparts no notable effect on the chain-of-custody.[3]

¶17. Bley testified that each of the tested employees remained in the room with her and watched as she completed the labeling process and sealed their respective specimens in the tamper proof container. Hobson testified to the contrary, claiming that she was not in the room when her sample was sealed; however, the record indicates otherwise. A chain-of-custody form, which Hobson signed and initialed, indicates the "specimen container(s) was/were sealed with tamper-proof seal(s) in [her] presence." Despite this acknowledgment, Hobson suggests that the urine either belonged to a different employee or that the hospital tampered with her sample. We are unconvinced.

¶18. The theory advanced by Hobson is analogous to one presented in *Curtis v. Mississippi Employment Security Commission*, 878 So. 2d 1094 (Miss. Ct. App. 2004). Curtis, an employee at Juvenile Rehabilitation in Brookhaven, Mississippi, tested positive for marijuana during a random drug screening and was consequently terminated. *Id.* at 1094 (¶1). Curtis's appeal ensued after he was denied unemployment benefits because of the drug related

---

[3] The State's expert, Dr. Lublin, testified that most collectors will sometimes allow test patients to sign the labels prior to placement on the containers because it is easier to sign them on the level surface provided by the forms.

discharge. *Id.*

¶19. Curtis argued a similar conspiracy theory, claiming that he was "set up" and that his specimen was swapped with someone else's. *Id.* at 1095 (¶5). Curtis, like Hobson, alleged flaws in the collection procedures as well. *Id.* The Court found that the positive test result was sufficient evidence to support the decision to deny Curtis benefits because of the purported misconduct. *Id*. at 1095 (¶11).

¶20. In support of her "set up" theory, Hobson also cites the fact that her drug test was negative for Meperidine's metabolite, Normeperidine. Hobson argues that if ingested on the day in question, the Meperidine should have metabolized by the time the drug test sample was collected; she asserts that because the sample only tested positive for the pure form of the narcotic, it was likely tainted. This assertion was invalidated by Dr. Lublin and Hobson's expert, Dr. Fredrick Carlton. During cross examination Dr. Carlton testified as follows:

State's Attorney: Okay. Would the absence of Normeperidine in any way invalidate the screen positive for Meperidine?

Dr. Carlton: Oh, no, I don't think so. I think it—I think it's a positive screen for Meperidine.

Both scientists testified at length during the Board hearing and ultimately agreed that the absence of the metabolite, Normeperidine, does not preclude presence of Demerol in a patient's system. As such, this argument is without merit.

¶21. The Board found that Hobson's positive test result provided clear and convincing evidence that she had converted Demerol to her own use. Likewise, we find the results

9

established substantial evidence to support the Board's decision. Unsupported by the record or even a potential motive, Hobson's "set up" accusations appear baseless. Based on the foregoing, we find there was substantial evidence and affirm the Board's decision.

### III.     Was the Board's decision arbitrary and capricious?

¶22.    "An act is arbitrary when it is done without adequately determining principle; not done according to reason or judgment, but depending upon the will alone—absolute in power, tyrannical, despotic, non-rational—implying either a lack of understanding of or a disregard for the fundamental nature of things." *Miss. State Dept. of Health v. Sw. Miss. Reg'l Med. Ctr.*, 580 So. 2d 1238, 1240 (Miss. 1991). "An action is capricious if done without reason, in a whimsical manner, implying either a lack of understanding of or disregard for the surrounding facts and settled controlling principles." *Miss. State Dep't of Health v. Natchez Cmty. Hosp.*, 743 So. 2d 973, 977 (¶13) (Miss. 1999).

¶23.    If an agency's decision is supported by substantial evidence, then it is not arbitrary or capricious. *Miss. Transp. Comm'n v. Anson*, 879 So. 2d 958, 964 (¶17) (Miss. 2004). After reviewing the record, we find that substantial evidence existed to support the Board's decision. Because these issues are so intertwined, it follows that the decision was not arbitrary and capricious.

### IV.     Did the chancery court err in reversing the Board's decision?

¶24.    "Review of an order from an administrative agency's proceeding is limited to the record and the findings of the agency." *Anson*, 879 So. 2d 958 at 964 (¶18) (citing *Miss.*

*Emp't Sec. Comm'n v. Pulphus*, 538 So. 2d 770, 772 (Miss. 1989)).

¶25. The chancery court reversed the suspension of Ann Hobson's license and all other forms of discipline the Board imposed, noting "concern" with: (1) a birthday party going on near the OR room where the Demerol was, (2) the chain of custody regarding the June 10 drug screen, and (3) the absence of Normeperidine in the urine sample. Each of these concerns were previously presented to, weighed by, and accordingly addressed by the Board.

¶26. The question before the court was not whether the agency's decision was subject to "concerns," as outlined by the chancellor, but "whether there was substantial evidence to support the finding of the administrative agency"; the "court[s] may not substitute [their] own judgment for that of the agency which rendered the decision, nor may we re-weigh the facts of the case." *Publ. Emps. Ret. Sys. v. Shurden*, 822 So. 2d 258, 266 (¶26) (Miss. 2002). Accordingly, we find the chancery court erred in reversing the Board's decision.

## CONCLUSION

¶27. Finding that the Board's decision was supported by substantial evidence, and thus not arbitrary and capricious, we reverse and render judgment reinstating the decision of the Mississippi Board of Nursing.

¶28. **REVERSED AND RENDERED.**

**BARNES, C.J., J. WILSON, P.J., GREENLEE, TINDELL, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR. CARLTON, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**

11