592 So.2d 37 (1991)
Stanley B. RIDDLE and the Medicine Shoppe
v.
MISSISSIPPI STATE BOARD OF PHARMACY.
No. 90-CA-0164.
Supreme Court of Mississippi.
December 4, 1991.
Rehearing Denied January 29, 1992.
*39 John P. Fox, Edward O. Powell, Houston, for appellants.
Mike C. Moore, Atty. Gen., Stephanie L. Ganucheau, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and ROBERTSON and McRAE, JJ.
ROBERTSON, Justice, for the Court:

I.
This case lies along a lesser known front line of state control of powerful mood altering or addictive drugs. We are called to vindicate the licensing authority of the Mississippi State Board of Pharmacy (sometimes "MSBPh" or "the Board"), but we are called to do so consistent with the rights the individual pharmacist enjoys to fair treatment when he is called to account for regulatory violations. Also implicated is the efficacy of the phone-in prescription process.
MSBPh found the appellant pharmacist had committed several hundred prescription violations and revoked his license. On judicial review, the Chancery Court affirmed. We affirm as well.

II.
Stanley B. Riddle is an adult resident citizen of Lee County, Mississippi. He has for a number of years operated a retail pharmacy business in Tupelo, Mississippi, known as The Medicine Shoppe. Riddle has heretofore been a licensed registered pharmacist subject to the jurisdiction of the Mississippi State Board of Pharmacy, holding Certificate of Registration No. E-5923. See Miss. Code Ann. §§ 73-21-75, et seq. (1972 and Supp. 1991).
Riddle's place of business, The Medicine Shoppe, has heretofore held Pharmacy Permit No. 1818-PTT issued by MSBPh. On Riddle's application, MSBPh also issued Controlled Substance Registration No. CS-1818-PTT to The Medicine Shoppe, which, until these proceedings, had been authorized to dispense controlled substances by virtue of MSBPh Registration No. CS-E-5923.
Between June 7, 1988, and June 23, 1988, MSBPh agents investigated Riddle's drug dispensing activities through The Medicine Shoppe and found, within a seventeen-month period, beginning January 5, 1987, and extending through and including June 3, 1988:
(a) 192 occasions when Riddle dispensed a controlled substance without a valid prescription;
(b) 45 occasions when Riddle dispensed prescription drugs without a valid prescription;
(c) 107 instances when Riddle refilled a prescription at a greater frequency than that allowed by the dosage regimen prepared by the physician prescriber.
These findings were largely the result of the investigative efforts of Compliance Agent Wyatt Smith. Agent Smith visited The Medicine Shoppe, inspected its records, and made notes of patients who seemed to be receiving inordinate amounts of prescription drugs. He then examined the patient profiles for these patients and compared the medications dispensed with prescription documents. In doing this, Smith found that most of the prescriptions under scrutiny were "phone-in" prescriptions, *40 meaning that a physician had purportedly called The Medicine Shoppe and authorized the prescription rather than giving the patient a written prescription to take to the pharmacy. In the case of prescriptions that seemed suspicious, Agent Smith recorded in painstaking detail the physician's name, the patient's name, the type of drug, the date and quantity dispensed, and the like, and then personally called on the physicians whom Riddle's records reflected as authorizing the prescriptions. Through this process he identified and documented the 344 violations, summarized above. One verification exception arose in the case of prescriptions purportedly authorized by Dr. P.L. Thomas, Jr., who had retired in January of 1987, and had not retained his records.
On July 14, 1988, the Executive Director of the Mississippi State Board of Pharmacy issued a thirty-one page formal complaint charging Riddle in the premises, setting forth each of the occasions when it appeared Riddle had dispensed a drug or controlled substance without proper authority. The complaint was served upon Riddle and advised him to appear before the Board for an administrative hearing. The complaint told Riddle the charges "if proven ... could result in the suspension or revocation or restriction of your license to practice pharmacy."[1]
In due course, the Board convened and on September 8, 1988, found that the evidence sustained the charges:
... that Stanley B. Riddle dispensed controlled substances without valid prescriptions[[2]] and refilled controlled substance prescriptions with greater frequency than indicated by the dosage regimen on the prescription document.[3]
The Board then revoked Riddle's pharmacy license and registration to dispense controlled substances, and, as well, The Medicine Shoppe's controlled substance registration.
Riddle appealed to the Chancery Court of Lee County, Mississippi. Miss. Code Ann. § 73-21-101(1) (1972). On January 16, 1990, that Court entered its order affirming *41 the MSBPh order. Riddle now appeals to this Court.

III.
Riddle argues alternatively that MSBPh's findings are not supported by substantial evidence and the Board's actions in his case were arbitrary and capricious. Miss. Code Ann. § 73-21-101(2)(a) and (b) (1972). These familiar standards, though not synonymous, overlap sufficiently that we often consider them simultaneously. See, e.g., Mississippi Real Estate Commission v. White, 586 So.2d 805, 808 (Miss. 1991). Riddle's argument, if we understand it, is that the "prescriptions" at issue were all phone-in prescriptions, that his records support his authority to dispense the drugs in issue, and that it is not his fault that the physicians kept sloppy or inadequate records. He discusses, as well, procedural deficiencies said to have been present in MSBPh's process, points more appropriately considered under Section IV below.
We have held in cases too numerous to mention that, in administrative proceedings against professionals licensed by the state, the disciplinary board or agency is charged to demand clear and convincing evidence of the offense. Mississippi Real Estate Commission v. White, 586 So.2d at 808; State Board of Psychological Examiners v. Hosford, 508 So.2d 1049, 1054 (Miss. 1987); Hogan v. Mississippi Board of Nursing, 457 So.2d 931, 934 (Miss. 1985); cf. Levi v. Mississippi State Bar, 436 So.2d 781, 783 (Miss. 1983). On judicial review, the Chancery Court does not proceed de novo, nor does this Court. Rather, the disciplinary agency's decision is insulated from judicial disturbance where it is supported by substantial evidence and is neither arbitrary nor capricious. Miss. Code Ann. § 73-21-101(2)(a) and (b) (1972); Duckworth v. Mississippi State Board of Pharmacy, 583 So.2d 200, 202 (Miss. 1991); State Board of Psychological Examiners v. Hosford, 508 So.2d at 1054. The judicial eye looks to see whether a fair-minded fact finder might have found the evidence clear and convincing that the offense had occurred, and, where that may be said, we will not disturb the Board's judgment.
The documents produced before the Board overwhelmingly support the charges. They identify by date, prescription document number, drug, quantity dispensed, patient name, and physician, each of the violations between January 5, 1987, and June 3, 1988. These are augmented by affidavits of Dr. Earl E. Whitwell, Dr. J.M. Ford, Dr. Glen H. Bennett, Dr. John McFadden, and Dr. P.K. Thomas, Jr. Even if the prescriptions allegedly attributed to but denied by Dr. Thomas be discounted, by reason of his retirement and destruction of his underlying records, the evidence abounds supporting Riddle's repeated violations. Prior to the hearing, Riddle had been served with an item by item bill of particulars and, as well, the affidavits of the above-named physicians. His defense was insubstantial, and, indeed, Riddle admitted:
Yes, at times I knew we were filling it too soon, as has been brought out. I admit that. At times we have filled it too soon.
Riddle calls our attention to Arkansas State Board of Pharmacy v. Isely, 680 S.W.2d 718 (Ark. Ct. App. 1984), where that court held a charge of refilling unauthorized prescriptions unsupported by substantial evidence. The citation is wholly unpersuasive in that a cursory reading of the case reveals that the physician who had originally given a supporting statement to the Health Department auditor later recanted and stated under oath that he may well have authorized the questioned prescription.
Riddle further argues MSBPh has acted arbitrarily and capriciously in the sanction it has imposed on him. He points to the fact that two other pharmacists working in The Medicine Shoppe  Roy Acton and Janice M. Trenary  were charged but given unfairly favorable treatment. We note that Trenary was charged with 124 violations, while Acton was charged with only 42. While the record of proceedings against Trenary and Acton is not before us, we find nothing in what we know *42 suggesting the Board has been arbitrary and capricious in its order against Riddle.
Without further ado, we hold the evidence before the State Board of Pharmacy was such that the Board could easily have found by clear and convincing evidence that Riddle, on a great many occasions over a seventeen-month time span, had dispensed controlled substances without valid prescriptions and had refilled controlled substance prescriptions with greater frequency than indicated by the dosage regimen document. These findings are supported by substantial evidence, and they are neither arbitrary nor capricious.[4] Miss. Code Ann. § 73-21-101(2)(a) and (b) (1972). Without doubt, MSBPh has authority to permit "phone-in" prescriptions. See Miss. Code Ann. § 73-21-73(p) (Supp. 1991) (defining prescription as including "a written or verbal order"). Such a process is a valuable convenience to one and all  physician, patient and pharmacist. MSBPh's regulations in fact allow such a process for Schedule III and IV controlled substances, the schedules within which fall most of the drugs Riddle impermissibly dispensed. Nor has the Board held Riddle responsible for the physicians' record keeping processes. Rather, what the evidence shows and what the Board found is that the physicians never authorized the 344 challenged "prescriptions." The fact that a physician's records do not show a phone-in prescription on isolated occasions may suggest error at that end. But where we have hundreds of "non-records," the inference is too powerful to ignore.

IV.
Riddle makes a plethora of challenges to the procedures employed before the Board. His principal complaint is that he was without counsel before the Board, and he says he made no effective waiver in that regard. He complains, as well, regarding the form of the evidence against him, e.g., that the physicians did not appear personally but that their "testimony" was taken on affidavit.
We think it important that the notice Riddle received back in July of 1988 advised him:
You may appear with or without the assistance of an attorney, on the date and at the time and place specified in this Notice of Hearing and cross-examine witnesses testifying against you, present testimony, evidence and argument in support of your position with respect to the allegations contained in the following complaint. Upon request, subpoenas for the attendance of witnesses and the production of books and papers will be issued.
See Miss. Code Ann. § 73-21-99(2) and (3) (1972).
At the outset of the August 11, 1988, hearing, counsel for the Board stated:
I have talked with Mr. Riddle this morning and advised him fully that he had the right to bring an attorney to be with him today. The Hearing of Notice and Complaint (sic) told him that; and I told him *43 that; and he made the representation to me that he would like to come before the Board and present his own case. Is that correct, Mr. Riddle?
MR. RIDDLE: Yes sir.
Under these circumstances, we find Riddle was advised he had a right to have counsel assist him at the hearing and that he effectively waived that right. Duckworth v. Mississippi State Board of Pharmacy, 583 So.2d at 202-203. Furthermore, a month before the hearing, he was given the details of the charges against him and was told, as well, that he had the right to call witnesses and present testimony and, if need be, to have subpoenas issued for attendance of witnesses and the production of books and papers. He was effectively advised, as well, of his right to cross-examine witnesses against him.
In retrospect, Riddle now sees he may have fared better at the hearing had he taken advantage of some of the rights just noted, but this seems always the case when a party waives his rights and things do not turn out so well. Suffice it to say that we do not credit such twenty-twenty hindsight as grounds for reversal.
Beyond this, Riddle makes complaint that the proceedings before the Board failed to observe the formalities of practice, procedure and evidence so familiar in the courtroom. As in all administrative proceedings, including those concerning licenses, these formalities are relaxed. See, e.g., Georgia Pacific Corporation v. McLaurin, 370 So.2d 1359 (Miss. 1979). The statute decrees
the board ... shall not be bound by strict rules of procedure or by the laws of evidence in the conduct of its proceedings, ... .
Miss. Code Ann. § 73-21-99(4) (1972), and thus resolves the point.

V.
Finally, Riddle maintains the Board's action was beyond the power of the Board to make. Miss. Code Ann. § 73-21-101(2)(c) (1972). Here he argues that on these facts "the revocation of ... [his] license was beyond the power of the Pharmacy Board."
MSBPh initiated these proceedings pursuant to the Mississippi Pharmacy Practice Act, Miss. Code Ann. § 73-21-69 et seq. (1983).
Miss. Code Ann. § 73-21-97 (1983) provides:
The board may refuse to issue or renew, or may suspend, revoke or restrict the license or permit of any person upon one or more of the following grounds:
* * * * * *
(c)(iii) Violation of pharmacy or drug laws of this state or rules or regulations pertaining thereto .. .
* * * * * *
(f) Violation of any of the provisions of this chapter or rules or regulations adopted pursuant to this chapter.
Where violations are found, Miss. Code Ann. § 73-21-103(1)(b) (1972) empowers the Board to "revo[ke] ... the offender's license and/or permit."
MSBPh's regulations prohibit licensees and permittees dispensing drugs and controlled substances without a valid prescription. They prohibit refilling a prescription at a greater frequency than the physician practitioner prescribes. The Board found in the aggregate 344 violations of these regulations. Notwithstanding, Riddle focuses on the severity of the sanctions imposed by the Board. He insists that revocation of the license and permits is unreasonable and an abuse of discretion.
We answered a like complaint in Harris v. Miss. Real Estate Commission, 500 So.2d 958 (Miss. 1986):
We take Ms. Harris' complaint against the severity of the sanction as an invitation for this Court to separately evaluate the findings and the punishment. We decline the invitation... . Our traditional standard of review, whether or not it arguably allows such a determination, does not obligate us to separately second guess an administrative agency's imposition of sanction. We take this position in recognition of the unique position administrative agencies hold. The agency *44 charged with regulating certain activities knows best how to police its own. This seems especially true where an agency commission comprised of fellow practitioners ... sits in judgment of one of its own.
Harris, 500 So.2d at 963. Compare Miss. Code Ann. § 73-21-75 (Supp. 1991).
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.
NOTES
[1] MSBPh acted pursuant to Article VIII of the Regulations of the Mississippi State Board of Pharmacy (revised January, 1987), which, in pertinent part, reads:

The Board of Pharmacy may refuse to issue or renew, or may suspend, revoke or restrict the permit of any permitted facility and/or impose a monetary penalty upon one or more of the following grounds:
A. Any activity by any person in the conduct of the facility which is a violation of any of the provisions of the Mississippi Pharmacy Practice Act or the Mississippi Uniform Controlled Substances Law.
B. Any activity by any person in the conduct of the facility which is a violation of the rules and regulations of the Board of Pharmacy.
[2] Article XI of the Regulations of the Mississippi State Board of Pharmacy provides:

Prescription drugs shall be dispensed only pursuant to a valid prescription.
For purposes of these Regulations, a valid prescription is an order issued by an individual licensed or authorized to prescribe a product to be used by a named and identifiable individual for a bona fide medical purpose. An order which does not provide adequate information for the interpretation of the prescription and the safe dispensing of the drug product is not a valid prescription.
A prescription prepared by the prescriber or his agent must bear an original signature of the prescriber, facsimile stamps are not acceptable. When oral or telephoned prescriptions are received which are transmitted by someone other than the prescriber, the name of the transmitter and the date of the transmission must be recorded on the prescription by the pharmacist receiving the prescription.
Article XVIII of the Regulations of the Mississippi State Board of Pharmacy provides:
1. A drug which is a controlled substance in Schedule II, III or IV may not be dispensed without a valid prescription.
[3] Article XIX of the Regulations of the Mississippi State Board of Pharmacy is as follows:

1. Partial filling or refilling of prescriptions for controlled substances in Schedules III, IV or V is permitted provided the pharmacist filling or refilling the prescription sets forth the quantity dispensed, the date and his/her initials or identifying code as the dispensing pharmacist on the prescription or on some other uniformly maintained record system. The total quantity of dosage units authorized on the prescription may be dispensed in partial filling or refilling of the prescription provided the dispensing is done within six (6) months of the origin of the prescription.
2. If the pharmacist records the refill without specifying the quantity of drug dispensed, he/she shall be deemed to have dispensed a refill for the full face amount of the prescription.
[4] As a postscript to the present point, we refer to our recent decision in Duckworth v. Mississippi State Board of Pharmacy, noted above. Duckworth addresses an issue we find in this case, an issue of concern though it is not formally tendered today, to-wit: that the Board's fact-finding processes were defective because they had failed to make specific fact findings. Duckworth, 583 So.2d at 202.

As in Duckworth, the findings we judicially review are general and conclusory. In Duckworth we did not find this fatal. Because of the increasing importance of MSBPh's regulatory functions and the imperative for fairness and regularity in the treatment of its licensees, we would remind the Board, as we did in Duckworth, that it is
better form for a fact finding administrative agency or commission to make a finding of fact on which to base ... [its decision].
Duckworth, 583 So.2d at 202, quoting Fortune Furniture Manufacturing Co., Inc. v. Sullivan, 279 So.2d 644, 647 (Miss. 1973); see also, Illinois Central Railroad Co. v. Jackson Ready-Mix Concrete, 243 Miss. 72, 137 So.2d 542 (1962). In Miller v. State Board of Pharmacy, 262 So.2d 188 (Miss. 1972), we condemned MSBPh's generalized form of complaint on grounds it did not give the accused pharmacist fair notice of the charges against him, and the Board has responded admirably, witness the detailed complaint served on Riddle. We see no reason why the Board cannot do likewise in making its findings of fact, conclusions of law, and applications of law to the facts.