# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 97-CC-00454-SCT

*LONDA MOLDEN AND APRIL AVERY*

*v.*

*MISSISSIPPI STATE DEPARTMENT OF HEALTH*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/06/97 |
| TRIAL JUDGE: | HON. PAT H. WATTS, JR. |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | KARL R. STEINBERGER |
| | STEPHEN WALKER BURROW |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: GEORGE W. NEVILLE |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 9/17/98 |
| MOTION FOR REHEARING FILED: | 10/23/98 |
| MANDATE ISSUED: | 12/10/98 |

**BEFORE SULLIVAN, P.J., McRAE AND SMITH, JJ.**

**SMITH, JUSTICE, FOR THE COURT:**

¶1. On January 16, 1995, Dorothy Gibson, a resident at Chateau Deville Nursing Home, was administered a whirlpool bath by Certified Nurse Aide Londa Molden which resulted in Gibson receiving burns to her lower extremities. Molden was assisted by Certified Nurse Aide April Avery in transporting Gibson from her room to the whirlpool bath and back to her room. After an initial investigation, the Department of Health found allegations of neglect against Molden and Avery to be valid, and an administrative hearing was requested by both Molden and Avery. On August 10, 1995, an administrative hearing was conducted before Hearing Officer Arthur C. Sharpe, Jr., and on March 29, 1996, Hearing Officer Sharpe found the charges of neglect to be valid and revoked Molden's and Avery's nurse aide certification. Molden and Avery were removed from the Certified Nurse Aide Roster and permanently placed on the State Nurse Aide Abuse Roster.

¶2. Molden and Avery appealed the hearing officer's decision to the Jackson County Chancery Court, and the court affirmed the hearing officer's decision. Molden and Avery now appeal to this Court and allege: (1) that the regulations adopted by the Department of Health violate the United States and Mississippi Constitutions; (2) that the hearing officer erred in denying Molden's and Avery's motion

to compel the Department of Health to disclose all documents in its files regarding this case; (3) that the hearing officer erred in denying Molden's and Avery's motion to permit access to witnesses testifying on behalf of the Department of Health; and (4) that affirming the adverse findings against Avery was arbitrary and capricious. The Department of Health argues: (1) that the regulations adopted are constitutional; (2) that discovery is not required in administrative hearings; (3) that access to witnesses is not required and full cross-examination was allowed at the administrative hearing; and (4) that affirming the adverse findings against Avery was not arbitrary and capricious.

## FACTS

¶3. On January 16, 1995, Dorothy Gibson, a long-term resident at Chateau Deville Nursing Home in Moss Point, was administered a whirlpool bath by Certified Nurse Aide Londa Molden, and as a result, Gibson received second degree burns to her lower extremities. Molden was assisted by Certified Nurse Aide April Avery in transporting Gibson from her room to the whirlpool room for her whirlpool bath. After placing Gibson in the whirlpool bath, Avery departed from the room. Molden then filled the bath with water while testing the temperature with her double-gloved hands. After discovering that there was no soap in the whirlpool room, Molden left Gibson unattended and went across the hall to retrieve some soap. Molden returned one to two minutes later and completed giving Gibson her bath. Avery returned to the whirlpool room to assist in transporting Gibson back to her room after the bath and noticed that Gibson's toe was bleeding. Molden and Avery then noticed that the skin on Gibson's legs was beginning to peel. Avery stated to Molden that she should report this to the treatment nurse, and Molden stated that she would report the change in Gibson's condition. However, after returning Gibson to her room, neither Molden nor Avery reported the change in Gibson's condition to the treatment nurse, but instead, Molden reported to Cynthia Harrison, LPN and treatment nurse, that Gibson was ready for her dressings.

¶4. Harrison proceeded to Gibson's room to administer the treatment for Gibson's decubitus when she discovered that Gibson's legs were very red and had blisters on them. Harrison then notified two of the charge nurses about Gibson's condition, and Gibson was transported to the Singing River Hospital where she was diagnosed with second degree burns to her legs. Both Molden and Avery were questioned about the change of Gibson's condition by their supervisors, and they responded that they noticed the change in Gibson's condition after the whirlpool bath but did not report the change in condition although Avery believed that Molden would report the change in Gibson's condition.

¶5. After Thomas Miller, Administrator of Chateau Deville Nursing Home, filed a written report of the incident, Mary Lou Vozzo, Nurse Aide Surveyor, Mississippi State Department of Health (hereinafter "the Department"), Division of Health Facilities Licensure and Certification, was assigned to conduct an investigation of the incident on February 13 and 14, 1995. On March 1, 1995, after an investigation of the complaint, the Department determined that the allegations of neglect against Molden and Avery were valid and informed Molden and Avery of their right to an administrative hearing. Molden and Avery were further informed that if they did not request a hearing, or if the complaint was proven, that their names would be removed from the Certified Nurse Aide Roster and placed permanently on the State Nurse Aide Abuse Roster. Molden and Avery each requested an administrative hearing, and on August 10, 1995, a hearing was held before Hearing Officer Arthur C. Sharpe, Jr.

¶6. On March 29, 1996, Hearing Officer Sharpe found that the findings of the staff of the Division of Licensure and Certification were valid and supported by an overwhelming quantum of credible evidence. Hearing Officer Sharpe specifically found that

> the failure to properly ascertain that the temperature of the water did not exceed a safe level before lowering the resident into it, and thereafter leaving the resident in scalding water constitutes resident neglect on the part of Molden. Failing to report so that immediate palliative, mitigating or curative measures could have been instituted constitutes resident neglect on the part of both Avery and Molden.

Hearing Officer Sharpe then ordered that the certification of Molden and Avery should be permanently revoked, that Molden and Avery be removed from the Certified Nurse Aide Roster, and that Molden and Avery be permanently placed on the State Nurse Aide Abuse Roster.

¶7. Molden and Avery then appealed the adverse findings of the hearing officer to the Jackson County Chancery Court, and the chancery court affirmed the decision of the Department and Hearing Officer Sharpe holding that the Department's findings were supported by substantial credible evidence and that the Department's decision was not arbitrary or capricious, did not violate the Constitutional rights of Molden and Avery, and did not constitute an abuse of discretion. Aggrieved by the chancery court's decision, Molden and Avery appeal to this Court and raise the following issues:

**I. WHETHER THE MISSISSIPPI DEPARTMENT OF HEALTH'S REGULATIONS REGARDING THE REMOVAL OF NURSE AIDES FROM THE REGISTRY VIOLATE THE UNITED STATES AND MISSISSIPPI CONSTITUTIONS.**

**II. WHETHER THE HEARING OFFICER ERRED IN DENYING MOLDEN'S AND AVERY'S MOTION TO COMPEL THE DEPARTMENT OF HEALTH TO DISCLOSE ALL DOCUMENTS IN ITS FILES REGARDING THIS CASE.**

**III. WHETHER THE HEARING OFFICER ERRED IN DENYING MOLDEN'S AND AVERY'S MOTION TO PERMIT ACCESS TO WITNESSES TESTIFYING ON BEHALF OF THE DEPARTMENT OF HEALTH.**

**IV. WHETHER THE CHANCERY COURT'S AFFIRMANCE OF THE ADVERSE FINDINGS AGAINST AVERY WAS ARBITRARY AND CAPRICIOUS OR ALTERNATIVELY LACKED SUBSTANTIAL EVIDENCE.**

<u>STANDARD OF REVIEW</u>

**¶8.** This Court "has generally accorded great deference to an administrative agency's construction of its own rules and regulations and the statutes under which it operates." *Mississippi State Tax Comm'n v. Mask*, 667 So. 2d 1313, 1314 (Miss. 1995). *See, e.g.*, *Melody Manor Convalescent Ctr. v. Mississippi State Dep't. of Health*, 546 So. 2d 972, 974 (Miss. 1989); *General Motors Corp. v. Mississippi State Tax Comm'n*, 510 So. 2d 498, 502 (Miss. 1987). Review by the trial court and this Court of orders of a state agency are limited by the arbitrary and capricious standard. *Mask*, 667 So. 2d at 1314-15 (citing *Mississippi State Tax Comm'n v. Dyer Inv. Co.*, 507 So. 2d 1287, 1289 (Miss. 1987)). An appeal of an order of an administrative agency "should be to determine whether or

not the order of the administrative agency '(1) was supported by substantial evidence, (2) was arbitrary or capricious, (3) was beyond the power of the administrative agency to make, or (4) violated some statutory or constitutional right of the complaining party.'" *Id.* at 1315 (quoting *Mississippi State Tax Comm'n v. Vicksburg Terminal, Inc.*, 592 So. 2d 959, 961 (Miss. 1991)).

## DISCUSSION OF LAW

### I. WHETHER THE MISSISSIPPI DEPARTMENT OF HEALTH'S REGULATIONS REGARDING THE REMOVAL OF NURSE AIDES FROM THE REGISTRY VIOLATE THE UNITED STATES AND MISSISSIPPI CONSTITUTIONS.

#### A. Nurse Aide Regulations

¶9. Molden[1] and Avery first contend that the Department's adoption of Nurse Aide Regulations pursuant to a federal mandate violates traditional principles of federalism and is therefore unconstitutional. Molden and Avery rely on the recent United States Supreme Court opinions in *New York v. United States*, 505 U.S. 144 (1992), and *Printz v. United States*, 117 S. Ct. 2365 (1997), in alleging that the Department adopted the regulations, i.e., Regulations Related to the Removal of Nurse Aides from the Registry, pursuant to a Congressional mandate which violated traditional principles of federalism. However, Molden and Avery do not challenge the constitutionality of the federal regulations, but rather, they challenge the Department's own regulations on the grounds that (1) the Department lacked statutory authority to adopt the regulations and (2) the regulations represent an unconstitutional implementation of the federal government's own policies. The Department, however, contends that the regulations regarding nurse aides were voluntarily adopted pursuant to a contract with the United States Department of Health and Human Services, Health Care Financing Administration and, thus, that the Department was not mandated by the federal government to enact a federal regulatory scheme. As a result, the Department asserts that its implementation of the regulations does not violate traditional principles of federalism.

¶10. In *New York v. United States*, the State of New York and two of its counties challenged, on Tenth Amendment grounds, federal legislation which required the States under certain conditions to take title to low-level radioactive waste generated within their borders. *New York v. United States*, 505 U.S. 144, 154 (1992). The Supreme Court framed the issue in the case as regarding "the circumstances under which Congress may use the States as implements of regulation; that is, whether Congress may direct or otherwise motivate the States to regulate in a particular field or a particular way." *New York*, 505 U.S. at 161. The Court concluded that:

> Because an instruction to state governments to take title to waste, standing alone, would be beyond the authority of Congress, and because a direct order to regulate, standing alone, would also be beyond the authority of Congress, it follows that Congress lacks the power to offer the States a choice between the two. . . . Either way, *"the Act commandeers the legislative processes of the States by directly compelling them to enact and enforce a federal regulatory program,"* an outcome that has never been understood to lie within the authority conferred upon Congress by the Constitution.

*Id.* at 176 (emphasis added) (citation omitted).

¶11. The Supreme Court in *Printz v. United States* expanded on the issue of the power of Congress relative to the States. *Printz* was an action brought by two county sheriffs to challenge the constitutionality of a portion of the Brady Act which required the chief law enforcement officer (CLEO) of certain localities "to participate, albeit only temporarily, in the administration of a federally enacted regulatory scheme." *Printz v. United States*, 117 S. Ct. 2365, 2369 (1997). The Supreme Court summarized the requirements of the Brady Act as follows:

> Regulated firearms dealers are required to forward Brady Forms not to a federal officer or employee, but to the CLEOs, whose obligation to accept those forms is implicit in the duty imposed upon them to make "reasonable efforts" within five days to determine whether the sales reflected in the forms are lawful. While the CLEOs are subjected to no federal requirement that they prevent the sales determined to be unlawful (it is perhaps assumed that their state-law duties will require prevention or apprehension), they are empowered to grant, in effect, waivers of the federally prescribed 5-day waiting period for handgun purchases by notifying the gun dealers that they have no reason to believe the transaction would be illegal.

*Printz*, 117 S. Ct. at 2369. The Supreme Court, relying on its holding in *New York*, stated:

> We held in *New York* that Congress cannot compel the States to enact or enforce a federal regulatory program. Today we hold that Congress cannot circumvent that prohibition by conscripting the State's officers directly. The Federal Government may neither issue directives requiring the States to address particular problems, nor command the State's officers, or those of their political subdivisions, to administer or enforce a federal regulatory program. It matters not whether policymaking is involved, and no case-by-case weighing of the burdens or benefits is necessary; such commands are fundamentally incompatible with our constitutional system of dual sovereignty.

*Id.* at 2384. However, Justice O'Connor, in her concurring opinion, stated:

> Our holding, of course, does not spell the end of the objectives of the Brady Act. States and chief law enforcement officers may *voluntarily* continue to participate in the federal program. . . . *Congress is also free to amend the interim program to provide for its continuance on a contractual basis with the States if it wishes, as it does with a number of other federal programs.*

*Id.* at 2385 (O'Connor, J. concurring). Thus, where a State voluntarily enters into a contractual arrangement with the Federal Government to adopt and carry out federal regulations, the States are not compelled to enact or enforce a federal regulatory program, and thus, traditional notions of federalism are not violated.

¶12. In the instant case, Congress amended the Federal Medicare and Medicaid statutes in the Omnibus Reconciliation Act of 1987 seeking to improve the quality of nursing home care around the country. Some of these amendments, referred to as the Nursing Home Reform Law, required Mississippi and the other States to:

> 1) specify, evaluate and approve training programs for nurse aides, and create a registry of nurse aides who have completed a state approved training program;

2) create and maintain an appeals process for patient transfers and discharges;

3) create standards regarding the qualifications of, and also certify, skilled nursing facility administrators;

4) certify the compliance of skilled nursing facilities with applicable federal statutes and regulations;

5) conduct periodic programs to educate staff and residents on current federal regulations and policies;

6) investigate allegations of resident abuse or neglect by a nurse aide; and

7) investigate possible violations of federal regulations by skilled nursing facilities.

*See generally* 42 U.S.C. § 1395i-3 (1994). 42 U.S.C. § 1395aa provides for the Federal Government to enter into contractual agreements with the States whereby the States perform the above functions and the Federal Government pays the States in advance or by way of reimbursement for the reasonable costs of performing the specified functions. 42 U.S.C. § 1395aa(b) (1994). Thus, the States perform the federal objectives through voluntary agreements entered into with the Federal Government and are not compelled by the Federal Government to enforce a federal regulatory program. Here, the Department voluntarily adopted its own set of regulations similar to the federal regulations governing the establishment of a nurse aide registry in order to carry out its contractual agreement with the Federal Government. Therefore, we hold that the Department's adoption of Nurse Aide Regulations does not violate traditional notions of federalism.

¶13. Molden and Avery further assert that the Department did not possess the statutory authority to adopt the regulations in question. However, to the contrary, Miss. Code Ann. § 41-3-15(4)(e) provided the Department with the following authority: "The State Board of Health shall have the authority: . . . To enter into contracts or agreements with any other state or federal agency, or with any private person, organization or group capable of contracting, if it finds such action to be in the public interest." Miss. Code Ann. § 41-3-15(4)(e) (1993). Thus, the Department clearly has the authority to enter into contracts with a federal agency and adopt regulations to carry out its contractual obligations where it finds such action to be in the public interest. As a result, this issue is without merit.

### B. Evidentiary and Procedural Standard

¶14. Molden and Avery contend that the evidentiary and procedural standards applied by the Department's regulations violated their due process and equal protection rights guaranteed by the United States and Mississippi Constitutions. Molden and Avery first allege that adversary findings were made against them before they were afforded due process, i.e., (1) notice of the allegations which have been made and (2) an opportunity for a hearing to rebut those allegations. The Department, however, contends that Molden and Avery were afforded due process because they were given notice and a hearing before the adverse findings against them were made final by the hearing officer and their names were placed on the Nurse Aide Abuse Roster.

¶15. This Court has held that "an administrative [agency] must afford minimum procedural due

process under the Fourteenth Amendment to the United States Constitution and under Art. 3, § 14 of the Mississippi Constitution consisting of (1) notice and (2) opportunity to be heard." ***Booth v. Mississippi Employment Sec. Comm'n***, 588 So. 2d 422, 428 (Miss. 1991) (citing ***[Phillips Petroleum Co. v. Shutts](), 472 U.S. 797 (1985)***; ***[Davis v. Scherer](), 468 U.S. 183 (1984)***; ***[Board of Regents v. Roth](), 408 U.S. 564 (1972)***). With respect to the investigation of allegations of resident neglect and abuse and misappropriation of resident property, federal law, pursuant to its agreement with the States under 42 U.S.C. § 1395aa, provides:

> The State shall provide, through the agency responsible for surveys and certification of nursing facilities under this subsection, for a process for the receipt and timely review and investigation of allegations of neglect and abuse and misappropriation of resident property by a nurse aide of a resident in a nursing facility or by another individual used by the facility in providing services to such a resident. The State shall, after providing the individual involved with a written notice of the allegations (including a statement of the availability of a hearing for the individual to rebut the allegations) and the opportunity for a hearing on the record, make a written finding as to the accuracy of the allegations. If the State finds that a nurse aide has neglected or abused a resident or misappropriated resident property in a facility, the State shall notify the nurse aide and the registry of such finding. If the State finds that any other individual used by the facility has neglected or abused a resident or misappropriated resident property in a facility, the State shall notify the appropriate licensure authority. A State shall not make a finding that an individual has neglected a resident if the individual demonstrates that such neglect was caused by factors beyond the control of the individual.

42 U.S.C. § 1395i-3(g)(1)(C) (Supp. I 1996). Thus, the Department's regulations provide the following procedure for when information is received or the licensing agency has cause to believe that a nurse aide has abused, neglected or misappropriated the property of a long term care resident:

> A. Whenever information is received, or when the licensing agency has cause to believe that an aide has abused, neglected, or misappropriated the property of a long term care resident in his or her care, the licensing agency shall investigate same. Documentation of said investigation shall be made including, but not limited to, the nature of the allegation and the evidence that led the licensing agency to conclude that an allegation was valid or not.

> B. Once a finding[(2)] is confirmed, the licensing agency shall send a "Notice of Right to Hearing" to the aide in question both by certified and regular mail, return receipt requested. . . . This notice will inform him/her of the alleged violation(s) and his/her conduct constituting the violation and confirm the findings by the investigator. It shall inform the aide that he/she has the right to request an administrative hearing via accompanying "Request for Hearing Form" and that the request for hearing must be in writing and must be received or postmarked within twenty (20) days of the date of notification of the findings and that failure to do so will be interpreted as a waiver of his/her right to such hearing. The notice will advise the aide that notice of the pending allegations will be sent to his/her employer as will the final outcome of same. Furthermore, should any prospective employer, or others, check the aide's status on the roster, they will be advised of any pending allegations and/or final decision. The aide will be advised that whether he/she requests a hearing or not, he/she has the right to submit written statement disputing the allegations if he/she chooses to do so. The aide will also be advised that

should an adverse decision be rendered against the aide by the Hearing Officer that the aide's name shall be placed on the Nurse Aide Abuse Roster (Registry) <u>permanently,</u> that he/she will be unemployable by any long-term care facility as a nurse aide, and that adverse findings against the aide shall be removed only if: (1) the findings were made in error, (2) an individual has been found not guilty in a court of law, or (3) the State is informed of the individual's death.

Mississippi State Dept. of Health, Licensure and Certification, *Regulations Related to the Removal of Nurse Aides from the Registry*, §§ II(A)-(B) (hereinafter "Regulations"). Molden and Avery contend that the findings made by the investigator constitute adversary findings made against them prior to notice being given and an opportunity to be heard. However, it is clear from the procedural guidelines afforded in the Department's regulations that the licensing agency's decision is to confirm whether the allegations are valid and whether a hearing should be held before a hearing officer. The findings by the licensing agency do not constitute final findings but merely amount to pending allegations awaiting a final determination by the hearing officer before a nurse aide's name can be removed from the Certified Nurse Aide Registry.

> [F]ederal law dictates:
>
> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. This notice must be of such nature as reasonably to convey the required information and it must afford a reasonable time for those interested to make their appearance. But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met, the constitutional requirements are satisfied.

*Booth*, 588 So. 2d at 427 (quoting ***Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950))**). In the instant case, Molden and Avery were each given notice of the licensing agency's findings that the allegations were valid and were given the opportunity for an administrative hearing in which they had the right to be represented by counsel, the right to be heard and to present evidence and witnesses, and the right to cross-examine witnesses. Thus, we find that Molden and Avery were afforded notice of the pendency of the action and an opportunity to present their objections, and as a result, their due process rights were not violated.

¶16. Molden and Avery also assert that the evidentiary standard applied by the hearing officer violated their due process rights. In the instant case, the Department's regulations provided that the licensing agency's decision had to be supported by "substantial evidence," but the hearing officer required the Department to prove the allegations by an "overwhelming weight" of the evidence. Molden and Avery assert that the appropriate evidentiary standard that should have been applied was to require the licensing agency to prove the allegations by "clear and convincing evidence." Molden and Avery contend that regardless of whether the evidentiary standard applied by the hearing officer was the "substantial evidence" standard or the "overwhelming weight of the evidence" standard that application of either was reversible error.

¶17. The Department, however, contends that application by the hearing officer of an "overwhelming weight of the evidence" standard rather than "clear and convincing evidence" is mere semantic in nature. The Department asserts that the "overwhelming weight of the evidence" standard clearly

expressed the heightened evidentiary standard in licensure and related actions and that the standard does not in any way violate the due process rights of Molden and Avery. The Department admits that the hearing officer incorrectly expressed the evidentiary standard the agency had to reach, but the Department contends that it is apparent the hearing officer held the agency to a level appropriate for a quasi-criminal matter since the language used by the hearing officer is the appellate standard used for reviewing criminal convictions.

¶18. This Court has held that "in administrative proceedings against professionals licensed by the state, the disciplinary board or agency is charged to demand clear and convincing evidence of the offense." *Riddle v. Mississippi State Bd. of Pharmacy*, 592 So. 2d 37, 41 (Miss. 1991) (citing *Mississippi Real Estate Comm'n v. White*, 586 So. 2d 805, 808 (Miss. 1991); *State Bd. of Psychological Exam'rs v. Hosford*, 508 So. 2d 1049, 1054 (Miss. 1987); *Hogan v. Mississippi Bd. of Nursing*, 457 So. 2d 931, 934 (Miss. 1985)). "On judicial review, the Chancery Court does not proceed de novo, nor does this Court. Rather, the disciplinary agency's decision is insulated from judicial disturbance where it is supported by substantial evidence and is neither arbitrary nor capricious." *Riddle*, 592 So. 2d at 41 (citations omitted). The *Riddle* Court expressed the scope of judicial review as follows: "The judicial eye looks to see whether a fair-minded fact finder might have found the evidence clear and convincing that the offense had occurred, and, where that may be said, we will not disturb the Board's judgment." *Id.*; *see also Nelson v. Mississippi State Bd. of Veterinary Med.*, 662 So. 2d 1058, 1060-61 (Miss. 1995).

¶19. In the case sub judice, Molden and Avery challenged the evidentiary standard before the hearing officer. The hearing officer found no error in the Department's recital of its evidentiary standard, but the hearing officer stated that he held the Department to a higher standard by requiring the Department to "prove its case by the overwhelming weight of the evidence, not merely support its allegations by substantial evidence." The chancellor, however, recognized the erroneous legal standard applied by the hearing officer and stated "that disciplinary proceedings against a professional, i.e. Nurse Aide, require that proof must be clear and convincing and supported by substantial evidence." The chancellor further found that the statements made by the hearing officer regarding the overwhelming weight of the evidence did not violate the due process rights of Molden and Avery. The chancellor then determined that the Department, irrespective of the hearing officer's statement, proved by clear and convincing evidence that Molden and Avery neglected Gibson. We find that although the hearing officer applied an incorrect evidentiary standard for the revocation of Molden's and Avery's licenses, any such error was cured by the chancellor in his application of the requisite judicial review stated in *Riddle* and determination that the Department proved neglect by clear and convincing evidence. As a result, we hold that Molden and Avery were afforded the constitutional requisite minimum procedural due process by the Department before final adverse findings were made against them.

### C. Excessive Punishment

¶20. Molden and Avery contend that the sole penalty of having a nurse aide's name placed on the Nurse Aide Abuse Roster if having been found guilty of abusing, neglecting, or misappropriating the property of a long term care resident results in excessive punishment in violation of the United States and Mississippi Constitutions since such action would result in permanent prohibition from being employed by a nursing home. The Department contends that the punishment is not excessive and is

further mandated by federal law.

¶21. At the time that Molden and Avery were found to have neglected Gibson, federal law provided:

> The registry . . . shall provide (in accordance with regulations of the Secretary) for the inclusion of specific documented findings by a State . . . of resident neglect or abuse or misappropriation of resident property involving an individual listed in the registry, as well as any brief statement of the individual disputing the findings.

42 U.S.C. § 1395i-3(e)(2)(B) (1994). The federal regulations further provided that the following information on each individual certified as a nurse aide be included in the registry:

> (i) The individual's full name;
>
> (ii) Information necessary to identify each individual;
>
> (iii) The date the individual became eligible for placement in the registry through successfully completing a nurse aide training and competency evaluation program or competency evaluation program or by meeting the requirements of § 483.150; and
>
> (iv) The following information on any finding by the State survey agency of abuse, neglect, or misappropriation of property by the individual:
>
> (A) Documentation of the State's investigation, including the nature of the allegation and the evidence that led the State to conclude that the allegation was valid;
>
> (B) The date of the hearing, if the individual chose to have one, and its outcome; and
>
> (C) A statement by the individual disputing the allegation, if he or she chooses to make one; and
>
> (D) This information must be included in the registry within 10 working days of the finding and must remain in the registry permanently, unless the finding was made in error, the individual was found not guilty in a court of law, or the State is notified of the individual's death.

42 C.F.R. § 483.156(c)(1) (1994). Furthermore, the federal regulations provided that a nursing facility could not employ nurse aides who had been found to have neglected a long term care resident as follows:

> (c) *Staff treatment of residents.* The facility must develop and implement written policies and procedures that prohibit mistreatment, neglect, and abuse of residents and misappropriation of resident property.
>
> (1) The facility must . . .
>
> (ii) Not employ individuals who have been--
>
> (A) Found guilty of abusing, neglecting, or mistreating residents by a court of law; or
>
> (B) Have had a finding entered into the State nurse aide registry concerning abuse, neglect, mistreatment of residents or misappropriation of their property . . . .

42 C.F.R. § 483.13(c)(1) (1994). Thus, the effect of the federal statute and regulations was to render a nurse aide who had been found to abuse, neglect, or misappropriate the property of a long term care resident and had her name placed permanently on the abuse roster to be unemployable by a nursing facility.

¶22. However, on August 5, 1997, Congress amended 42 U.S.C. § 1395i-3 so as to require the States to adopt a procedure that would permit a nurse aide to petition to have her name removed from the abuse roster. 42 U.S.C. § 1395i-3(g)(1)(D) now provides:

> (i) In general
>
> In the case of a finding of neglect under subparagraph (C), the State shall establish a procedure to permit a nurse aide to petition the State to have his or her name removed from the registry upon a determination by the State that--
>
> (I) the employment and personal history of the nurse aide does not reflect a pattern of abusive behavior or neglect; and
>
> (II) the neglect involved in the original finding was a singular occurrence.
>
> (ii) Timing of determination.
>
> In no case shall a determination on a petition submitted under clause (i) be made prior to the expiration of the 1-year period beginning on the date on which the name of the petitioner was added to the registry under subparagraph (C).

42 U.S.C. § 1395i-3(g)(1)(D) (Supp. II 1997). Thus, the amendment of the federal statute renders Molden and Avery's contention that the penalty imposed on them is an excessive penalty as moot whereby States are now required to provide a procedure for a nurse aide found to have neglected a long term care resident to petition the removal of her name from the abuse roster and be employable by a nursing facility again. As a result, this issue is without merit.

### D. Vagueness

¶23. Molden and Avery next contend that the chancellor erred in not finding the standard of conduct for the charge of neglect against nurse aides is unconstitutionally vague and, thus, violates their due process rights. Molden and Avery assert that the neglect standard is vague and unconstitutional because it requires nurse aides to make judgments about their conduct which is not within their knowledge and training, as well as the common knowledge and intelligence of ordinary persons. The Department, however, contends that the standard of conduct defining neglect in the regulations is clear and unambiguous and does not approach the level of being vague and over broad in violation of Molden's and Avery's due process rights.

¶24. The United States Supreme Court has held that "[i]t is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). Furthermore, the Supreme Court, in **Roth v. United States**, stated that "lack of precision is not itself offensive to the requirements of due process." *Roth v. United States*, 354 U.S. 476, 491 (1957). The **Roth** Court further stated that the "'Constitution does

not require impossible standards'; all that is required is that the language 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices . . . .'" *Roth*, 354 U.S. at 491 (quoting *United States v. Petrillo*, 332 U.S. 1, 7-8 (1947)). This Court has followed the same analysis in determining whether statutes and guidelines provide sufficient warning as to the proscribed conduct. *See Gardner v. State*, 531 So. 2d 805, 809 (Miss. 1988) (applying vagueness test set forth in *Roth*); *Cassibry v. State*, 404 So. 2d 1360, 1368 (Miss. 1981) ("'The test is whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.'")(quoting *Jordan v. DeGeorge*, 341 U.S. 223, 231 (1951)).

¶25. The Department's regulations define the term "neglect" as "the failure to supply the long term care resident with the care, food, clothing, shelter, health care, supervision or other services which are necessary to maintain his mental and physical health." Regulations § I(C)(12). We find that while the Department's definition of neglect is broad and general and does not provide any specific examples of what actions may constitute neglect, the definition does provide a sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. We further find that the definition of neglect adopted by the Department is clearly sufficient to give one warning that leaving a long term care resident unattended in a whirlpool bath with scalding water and then not reporting the change in the resident's condition to the nurse in charge would amount to neglect. As a result, we hold that the standard of conduct for a charge of neglect adopted by the Department is not unconstitutionally vague, and thus, this issue is without merit.

### II. WHETHER THE HEARING OFFICER ERRED IN DENYING MOLDEN'S AND AVERY'S MOTION TO COMPEL THE DEPARTMENT OF HEALTH TO DISCLOSE ALL DOCUMENTS IN ITS FILES REGARDING THIS CASE.

¶26. Molden and Avery contend that the hearing officer erred in denying them discovery of all the documents maintained by the Department regarding the investigation and allegations against Molden and Avery. Molden and Avery assert that given the highly penal nature of the proceeding and the potential retribution they face, their federal and state due process rights demand they be given prior access to all documents and any other evidence or information in the State's possession relating to the charges against them. The Department, however, asserts that the hearing officer did not err in denying Molden's and Avery's request for discovery because the full panoply of pleadings and processes or discovery provided for full-fledged litigants in law and equity courts is not available for use before an administrative board.

¶27. In *State Oil & Gas Board v. McGowan*, this Court stated that "[t]he general rule . . . is that rules of civil procedure do not apply to administrative proceedings unless the rules specifically so provide." *State Oil & Gas Bd. v. McGowan*, 542 So. 2d 244, 247 (Miss. 1989). The *McGowan* Court stated:

> There appears to be no authority for transplanting the Mississippi Rules of Civil Procedure into administrative proceedings. The scope of the rules, found in Rule 1, M.R.C.P., govern procedures in the circuit courts, chancery courts, and county courts in all suits of a civil nature. Administrative hearings are not included within their purview as the State Oil & Gas Board is not a circuit, chancery or county court.

*McGowan*, 542 So. 2d at 247. Likewise, the State Department of Health is not a circuit, chancery, or county court, and thus, the Mississippi Rules of Civil Procedure, including the rules of discovery, were not applicable to the administrative hearing before the hearing officer. ***Id.***

¶28. In the case sub judice, Molden and Avery filed a motion to compel discovery before the hearing to require the Department to produce any and all documents or other evidence, whether incriminating or exculpatory, in its possession regarding the pending charges against them, and the hearing officer denied the motion except that he allowed Molden and Avery to be provided those documents that the Department would introduce into evidence. The Department's regulations governing the administrative hearings held with regard to the removal of nurse aides from the registry provide:

> C. If a hearing is requested, the same shall be held within sixty (60) days of the request. A Notice of hearing shall be sent to all parties stating the date, time, and place of the hearing.

> 1. The aide may appear with or without counsel and shall have the right to cross-examine all witnesses, present evidence/testimony, either written or oral, on his or her own behalf, and to refute any testimony or evidence presented.

> 2. A hearing officer shall be appointed by the Director.

> 3. *Formal rules of evidence and procedure will not apply*, but a record of said hearing shall be made. The licensing agency shall present its case, and the aide will then present his or her case. In order for the licensing agency's decision to be upheld, the facts constituting the violation must be proved by substantial evidence.

Regulations § II(C). Thus, since the regulations do not provide that the formal rules of evidence and procedure are applicable at the hearing, we hold that the hearing officer did not err in denying Molden's and Avery's motion to compel discovery as to all documents possessed by the Department. *See **McGowan***, 542 So. 2d at 247. As a result, this issue is without merit.

### III. WHETHER THE HEARING OFFICER ERRED IN DENYING MOLDEN'S AND AVERY'S MOTION TO PERMIT ACCESS TO WITNESSES TESTIFYING ON BEHALF OF THE DEPARTMENT OF HEALTH.

¶29. Molden and Avery contend that the hearing officer erred by denying their motion to permit access to the witnesses testifying on behalf of the Department. Molden and Avery contend that given the highly penal nature of the proceedings against them that they should be afforded the same right to interview the Department's witnesses as criminal defendants are permitted to interview prosecution witnesses. *See* URCCC 9.04(D). The Department, however, asserts that the proceedings are not criminal and, furthermore, that there is no requirement that nurse aides be allowed to interview witnesses prior to an administrative hearing.

¶30. As stated above, "[t]he general rule . . . is that rules of civil procedure do not apply to administrative proceedings unless the rules specifically so provide." ***State Oil & Gas Bd. v. McGowan***, 542 So. 2d 244, 247 (Miss. 1989). In the instant case, the Department's regulations do not provide nurse aides with the right to be allowed to interview the Department's witnesses prior to the administrative hearing, but the record does reveal that Molden's and Avery's attorneys were

provided with summaries of the witness statements. However, the Department's regulations do provide for the cross-examination of the Department's witnesses at the administrative hearing. *See* Regulations § II(C)(1). Thus, Molden and Avery had no right to conduct interviews or take depositions of the Department's witnesses before the administrative hearing, and furthermore, Molden and Avery fail to show any prejudice they suffered by the hearing officer's denial of this request where they had the opportunity to fully cross-examine the Department's witnesses at the evidentiary hearing. As a result, we find that this assignment of error is without merit.

### IV. WHETHER THE CHANCERY COURT'S AFFIRMANCE OF THE ADVERSE FINDINGS AGAINST AVERY WAS ARBITRARY AND CAPRICIOUS OR ALTERNATIVELY LACKED SUBSTANTIAL EVIDENCE.

¶31. Avery contends that the chancery court's affirmance of adverse findings against her was arbitrary and capricious or, alternatively, lacked substantial evidence because the uncontradicted facts show she reasonably and justifiably relied upon Molden to report the changes in Gibson's skin condition. The Department contends that the adverse findings made against Avery were not arbitrary and capricious and supported by substantial evidence.

¶32. In the case sub judice, the facts are uncontradicted that Gibson was the patient of Molden and was her primary responsibility. The testimony reveals that April Avery assisted Molden in transporting Gibson from her room to the whirlpool room in order for Molden to administer to Gibson a whirlpool bath. After assisting Molden with transporting Gibson to the whirlpool room, Avery departed from the room. Molden then proceeded to administer the whirlpool bath to Gibson. Avery returned to the whirlpool room after Molden finished administering the whirlpool bath to Gibson to assist in transporting Gibson back to her room. Avery first noticed that Gibson's toe was bleeding and informed Molden of this condition. Then, Molden and Avery noticed that the skin of Gibson's legs was beginning to peel. Avery stated to Molden that she should report this to the treatment nurse, and Molden stated that she would report the change in Gibson's condition. Molden and Avery returned Gibson to her room, but neither Molden nor Avery reported the change in Gibson's condition to the treatment nurse. Rather, Molden reported to Cynthia Harrison that Gibson was ready for her dressings. Thus, the only contact that Avery had with Gibson was during the time that she assisted Molden in transporting her to the whirlpool room and back to her room.

¶33. Avery asserts that the adverse findings made against her are arbitrary and capricious because she reasonably and justifiably relied upon Molden to report the changes in Gibson's skin condition. The hearing officer, however, with regard to the actions of Avery, stated:

> I find that the conduct of Avery is likewise inexcusable. She assisted Molden in removing the resident from the whirlpool, thus knowing that Molden had been the one who gave the resident the bath. When the dramatic skin changes started appearing, she in fact called Molden's attention to the fact. Molden stated that she [Molden] would report the incident. But Avery knew that Molden had given the whirlpool treatment to the resident. Avery saw Molden's reaction. Avery knew or should have known that Molden, being the one who caused the injury, might not report the incident, and should have done so herself;
>
> I specifically find that the conduct of Avery and Molden is the exact, specific type of egregious conduct which the Mississippi Legislature and the Congress intended to address and deter when

they enacted the Vulnerable Adults Act and the Certified Nurse Aide Program. At best the conduct can be characterized as reckless, at worst, as callous disregard for the resident's safety and well-being.

Then, on appeal to the chancery court, the chancellor entered his order affirming the hearing officer's decision and stated:

> The Appellants have requested the Court to reverse the decision of the Board because there was no substantial evidence presented to place Avery on the Nurse Aide Abuse Roster. The Court finds from the testimony that Avery, as a Nurse Aide, was under certain duties, and responsibilities which included, but was not limited to reporting to a Charge Nurse any change in the condition of a patient observed by her. It is clear from the record, including the testimony of Avery, that she did, in fact, see changes in the condition of Gibson, at the conclusion of the whirlpool bath, and did not, in fact, report the same to a nurse in charge or to anyone. The Court considers the above rule to be very important and necessary in caring for the needs of patients in long-term facilities. The patients involved in long-term facilities are mostly elderly individuals, and cannot care for themselves, and rely on the Nurse Aides to administer to their needs.

> It is clear from the job description of Avery that she was required to report her observations of Gibson to a nurse in charge, and not relegate that responsibility to Molden. Molden was not a nurse in charge, but was a Nurse Aide, as was Avery.

¶34. This Court has held that "[t]he decision of an administrative agency is not to be disturbed unless the agency order was unsupported by substantial evidence; was arbitrary and capricious; was beyond the agency's scope or powers; or violated the constitutional or statutory rights of the aggrieved party." **Board of Law Enforcement Officers Standards & Training v. Butler**, 672 So. 2d 1196, 1199 (Miss. 1996) (citing **Sprouse v. Mississippi Employment Sec. Comm'n**, 639 So. 2d 901, 902 (Miss. 1994); **Mississippi Comm'n on Envtl. Quality v. Chickasaw County Bd. of Supervisors**, 621 So. 2d 1211, 1215 (Miss. 1993); **Melody Manor Convalescent Ctr. v. Mississippi State Dep't. of Health**, 546 So. 2d 972, 974 (Miss. 1989)). This Court has discussed the meaning of the terms "arbitrary" and "capricious" as follows:

> The terms "arbitrary" and "capricious" are open-textured and not susceptible of precise definition or mechanical application. . . .

> "Arbitrary" means fixed or done capriciously or at pleasure. An act is arbitrary when it is done without adequately determining principle; not done according to reason or judgment, but depending upon the will alone,--absolute in power, tyrannical, despotic, non-rational,--implying either a lack of understanding of or a disregard for the fundamental nature of things.

> "Capricious" means freakish, fickle, or arbitrary. An act is capricious when it is done without reason, in a whimsical manner, implying either a lack of understanding of or a disregard for the surrounding facts and settled controlling principles. . . .

**Mississippi State Dep't. of Health v. Southwest Mississippi Reg'l Med. Ctr.**, 580 So. 2d 1238, 1240 (Miss. 1991) (quoting **In re Hous. Auth. of City of Salisbury**, 70 S.E.2d 500, 503 (N.C. 1952)).

Included within Avery's job description was a duty to "[r]eport any changes observed in the patients condition to the charge nurse." Avery observed changes in Gibson's condition, reported her observations to Molden, and informed Molden that she should report to the charge nurse the change in Gibson's condition, but Avery did not actually report herself the changes in Gibson's condition to the charge nurse. We find that Avery was not reasonably justified in relying on Molden to report Gibson's changes in condition where Avery was fully aware that Molden was administering the whirlpool bath to Gibson and was primarily responsible for the changes in Gibson's condition. Thus, we find that Avery's failure to report the changes in Gibson's condition resulted in the neglect of Gibson. Therefore, we hold that the agency's decision to permanently revoke the certification of April Avery, remove her name from the Certified Nurse Aide Roster, and to permanently place her name on the State Nurse Aide Abuse Roster was not arbitrary and capricious.

## CONCLUSION

¶35. We affirm the Department's decision to permanently revoke the certification of Londa Molden and April Avery and have their names permanently placed on the State Nurse Aide Abuse Roster. We further observe that Molden's appeal is moot as a result of the constitutional validity of the Department's adoption of its Regulations Related to the Removal of Nurse Aides from the Registry and Molden's plea of nolo contendere to the misdemeanor abuse of a vulnerable adult which, per the regulations, automatically places her name on the State Nurse Aide Abuse Roster.

¶36. **AFFIRMED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, McRAE, ROBERTS, MILLS AND WALLER, JJ., CONCUR.**

1. All issues in this appeal regarding Londa Molden are moot upon the finding that the regulations in question are constitutional and within the authority of the State Department of Health to adopt. The record reveals that on February 14, 1996 Molden was convicted in the Jackson County Circuit Court on a plea of nolo contendere to a charge of misdemeanor abuse of a vulnerable adult pursuant to Miss. Code Ann. § 43-47-19(1). As a result, pursuant to the Department's regulations, Molden's name was to be automatically removed from the Registry and placed on the Nurse Aide Abuse Roster upon a finding of guilty in a court of law or a nolo contendere plea. Mississippi State Dept. of Health, Licensure and Certification, *Regulations Related to the Removal of Nurse Aides from the Registry*, §§ II(B)(3).

2. The Department's regulations, § I(C)(6), defines finding as follows: "'Finding' shall mean a determination made by the licensing agency that validates allegations of abuse, neglect or misappropriation against a long-term care resident."